**Eurid MORGAN, Plaintiff–Appellant,**

v.

**HARRIS TRUST AND SAVINGS BANK of CHICAGO, Defendant–Appellee.**

No. 87–2320.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 13, 1988.*

Decided Feb. 6, 1989.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App. P. 34(a); Circuit Rule 34(f). No such statement

having been filed, the appeal has been submitted on the briefs and record.

Chanon Williams, Chicago, Ill., for plaintiff-appellant.

Bruce R. Alper, Vedder Price Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before CUDAHY, FLAUM and KANNE, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Eurid Morgan alleged that he was involuntarily terminated from defendant-appellee Harris Trust and Savings Bank of Chicago's (Harris) employ in contravention of his rights under Title VII and his contractual rights as created by Harris' personnel manual. The district court granted summary judgment for Harris. We affirm.

### I. Facts

Morgan, a black man, was employed by Harris from 1968 until March 1983. In August 1982, $17,088 was discovered missing from the currency unit where Morgan was then working as an operations officer. In October 1982, an investigation was conducted where all 25 employees in the currency unit's cash processing section were given polygraph tests; Morgan failed the test twice.[1] He was fired on March 17, 1983.

Harris used polygraph testing only after other attempts to stop unexplained losses at the bank had failed. Harris' policy was that any employee failing the exam twice was to be discharged. Of 25 employees tested, five failed the test twice. All five were discharged and all five were black. Two of the five admitted stealing from the bank.

Morgan alleged that he was fired because he was black (disparate treatment), and that Harris' polygraph testing procedure had a disproportionate impact on blacks (disparate impact). He also alleged

1. The polygraph examiner concluded Morgan was not being truthful when Morgan denied knowing of any current bank employee who had stolen money from the bank.

that Harris' Personnel Policies and Procedures manual created contractual rights which Harris breached when it discharged him contrary to its manual's stated termination procedure. Finally, he alleged his termination was against Illinois public policy under the Illinois Constitution and Illinois Human Rights Act.

Harris answered the Title VII claims and moved for summary judgment on the remaining two claims, contending that its personnel manual created no contractual rights and explicitly provided for the right to terminate employees "at-will." Harris also contended that no violation of Illinois public policy had occurred. On May 15, 1986, the court granted Harris' summary judgment motion.[2] Harris then moved for summary judgment on Morgan's Title VII claims, contending that Morgan failed to establish a *prima facie* case under either disparate treatment or disparate impact theory. This second summary judgment motion was granted on April 14, 1987.

Morgan subsequently moved the district court to reconsider its two orders regarding Morgan's Title VII and breach of implied contract claims. After reconsideration, these claims were again denied on July 20, 1987. Morgan now appeals the final decisions of the district court, contending that summary judgment was improper when genuine issues of material fact existed as to both his Title VII and breach of contract claims.

## II. The District Court Properly Granted Summary Judgment on Plaintiff's Disparate Treatment Claim

■ A motion for summary judgment should only be granted when no genuine issue of material fact exists. Fed.R.Civ.P. 56(e). In reviewing the denial of such a motion, this court must view the record and draw inferences from it in the light most favorable to the party opposing the motion. *Beard v. Whitley*, 840 F.2d 405, 409–10 (7th Cir.1988) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Illinois v. Bow-*

*en*, 808 F.2d 571, 574 (7th Cir.1986). However, when a party bears the burden of proof on an issue, that party may not simply rest on its pleadings, but must affirmatively demonstrate with specific factual allegations that a genuine issue of material fact exists and requires trial. *Beard*, 840 F.2d at 410 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a rational trier of fact could not find for the nonmoving party based on the record as a whole, there is no trial issue. *Beard*, 840 F.2d at 410 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Summary judgment will not be defeated simply because issues of motive or intent are involved, and is proper when the plaintiff fails to indicate any motive or intent to support plaintiff's position. *Id.* (citing *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986)); *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914, (7th Cir.1989); *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 366 (7th Cir.1983).

■ In reviewing a district court's grant of summary judgment, we must also be mindful of the burdens of proof imposed on parties to a Title VII disparate treatment claim. *Beard*, 840 F.2d at 409–10. For any Title VII case alleging racially motivated termination, plaintiff must show he or she was treated less favorably than similarly situated employees and that defendant's intent was discriminatory. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Texas v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). A *prima facie* case is established when plaintiff produces sufficient evidence of disparate treatment so that a causal link between plaintiff's race and plaintiff's discharge can be inferred. *McDonnell Doug-*

---

**2.** The court warned that Morgan was "dangerously close to violating the mandate of Fed.R- Civ.P. 11" for his claim under the Illinois Human Rights Act.

*las Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Such a link, however, merely creates a presumption which defendant may rebut by articulating a legitimate nondiscriminatory reason for plaintiff's discharge. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The burden then returns to plaintiff to show that defendant's reason for termination was only pretextual, and the ultimate burden of proving intentional discrimination stays with the plaintiff. *Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–95; *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

■ We agree with the district court that Morgan failed to establish even a *prima facie* case of discrimination. There was no showing that he was treated differently on account of his race, that the procedure for selecting employees to be polygraphed was improper, or that any employee who failed the exam twice was not also discharged. Morgan's entire cash processing section was polygraphed, and while some employees were exempted, they were exempted for non-discriminatory reasons, *see* section III, *infra.* Nor does Morgan allege that these reasons were pretextual. To the contrary, Morgan's own deposition testimony admits his belief that the selection process was neither racially biased nor motivated.

■ As recently stated by the United States Supreme Court, "[t]he offense alleged in a disparate-treatment challenge focuses exclusively on the intent of the employer." *Watson v. Fort Worth Bank and Trust,* — U.S. —, 108 S.Ct. 2777, 2793, 101 L.Ed.2d 827 (1988) (Blackmun, J., concurring) (citing *see Teamsters v. United States,* 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) ("proof of discriminatory motive is critical")). Morgan has hardly alleged such a

motive. Furthermore, as this court recently noted, when a party's own admissions combined with other telling evidence create no genuine issue of fact, summary judgment is appropriate, even when motive is at issue and all reasonable inferences are drawn in the nonmovant's favor. *Friedel v. City of Madison,* 832 F.2d 965 (7th Cir. 1987).

### III. The District Court Properly Granted Summary Judgment on Plaintiff's Disparate Impact Claim

■ As distinguished from disparate treatment analysis, "the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson,* 108 S.Ct. at 2785; *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971) (disparate impact analysis addresses policies which are "fair in form, but discriminatory in operation"). A *prima facie* case of disparate impact is established by showing through significant statistical disparity that a facially neutral employment practice has a discriminatory impact on a protected class. *Watson,* 108 S.Ct. at 2793 (Blackmun, J., concurring); *Connecticut v. Teal,* 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982); *Shidaker v. Tisch,* 833 F.2d 627, 630–31 (7th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 2900, 101 L.Ed.2d 933 (1988). The burden then shifts to the employer to show that the employment practice bears a manifest relationship to the employment in question. *Watson,* 108 S.Ct. at 2790 (O'Connor, plurality opinion); *Griggs,* 401 U.S. at 432, 91 S.Ct. at 854. Whether this burden is merely one of production or one of ultimate proof, however, is less clearly settled.[3] Plaintiff may, of course, still pre-

---

**3.** Though Justice O'Connor wrote for the majority on four sections of the *Watson* opinion, she was unable to hold that majority on the issue of whether plaintiff retains the ultimate burden of proof after the burden to show business necessity has shifted to the defendant. Writing for the plurality, O'Connor asserted that, as in cases of disparate treatment, the ultimate burden re-

mains always with the plaintiff; it is the plaintiff's burden to disprove defendant's showing of business necessity by evidence that other tests or selection devices would serve defendant's purpose without the undesirable racial impact. 108 S.Ct. at 2790 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)); *Griggs,* 401 U.S. at 432, 91

vail by showing that defendant's business necessity claim is pretextual. *Teal,* 457 U.S. at 447, 102 S.Ct. at 2530–31 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)); *Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977).

In an attempt to establish his *prima facie* case, Morgan offered the following evidence: of 25 employees taking polygraph exams in February and March of 1983, 12 were black, 10 were white, two were Hispanic, and one was Asian. Six employees were exempted—five white and one Hispanic. Of these six, four white employees had been tested just four weeks earlier as part of another investigation, and the other white employee was a supervisor who offered to be tested, but whose offer Harris declined. A pregnant employee, who was Hispanic, was given a structured interview instead of a polygraph, pursuant to the examiner's standard operating procedure. As already stated, all five employees who failed the exam were discharged and all five were black. Two of these employees admitted stealing from the bank.

 It is well settled that evidence of statistical disparity must be significant or substantial to establish that an otherwise neutral employment practice results in a discriminatory impact. *Washington v. Electrical Joint Apprenticeship and Training Committee of Northern Indiana,* 845 F.2d 710, 713 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988); *Shidaker,* 833 F.2d at 631; *Soria v. Ozinga Bros., Inc.,* 704 F.2d 990, 995 (7th Cir.1983). Where the sample size or alleged effect is so statistically insignificant that no inference of discriminatory impact is proper, plaintiff fails to present a *prima facie* case. *Id.* The district court found that Morgan failed to meet this burden. We agree.

Morgan demonstrated only that of 25 employees tested, 3 who did not admit stealing failed the polygraph exam twice and were subsequently discharged. This is not the kind of sample from which a court may reliably extrapolate the existence of discriminatory impact. Plaintiff offered additional evidence that from January 1979 to July 30, 1983, 84 employees took polygraph exams. Of these, 38 were white, 33 were black, 10 were non-white, non-black, and three were of unknown race. Twenty-two of these 84 employees were terminated for failing the test twice and/or admitting dischargeable conduct. Of these 22 employees, 9 were white, 13 were black, and 15 admitted theft or other dischargeable conduct.

 While both sides offered various percentages to better illustrate the data, the breakdown as the district court concluded, is "markedly balanced." Morgan argues now on appeal that the numbers do show a statistically significant impact, but his allegation is not borne out by the raw data. It also comes too late. Morgan offered his expert's statistical analysis of the data for the first time on his motion for reconsideration. No analysis was offered during the pendency of Harris' summary judgment motions to counter Harris' claims. The district court properly held that Morgan's failure to present his statistical evidence earlier prevented its consideration on his motion for reconsideration. *See, Friedel,* 832 F.2d at 969; *Publishers Resource, Inc. v. Walker–Davis Publications,* 762 F.2d 557, 561 (7th Cir.1985) (motion for reconsideration is improper vehicle to introduce new evidence which could have been adduced during summary judgment proceeding) (citation omitted).

Because we conclude that Morgan has failed to present statistics or analysis sufficient to establish a *prima facie* case, we need not and do not address whether Harris met, or could have met, its burden of business necessity.

S.Ct. at 854. In contrast, Blackmun wrote that the Court's cases since *Griggs* require more than "any" legitimate business reason, but rather that defendant show such practice is "necessary to safe and efficient job performance." *Watson,*

108 S.Ct. at 2794 (Blackmun, J., concurring) (quoting *Dothard v. Rawlinson,* 433 U.S. 321, 332, n. 14, 97 S.Ct. 2720, 2728 n. 14, 53 L.Ed.2d 786 (1977)).

## IV. The District Court Properly Found Defendant's Personnel Manual Did Not Create the Contractual Rights which Plaintiff Alleges

 Morgan selectively cited three sections of Harris' Personnel Policies and Procedures Manual, alleging that under the Illinois Supreme Court's recent decision in *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E. 2d 314 (1987), the manual created contractual rights between Morgan and Harris. The district court found that Harris' manual taken as a whole created no such rights and explicitly preserved Harris' right to terminate employees "at will." Again, we agree.

The Illinois Supreme Court recently held that an employer's policy statements create contractual rights when the traditional contract formation requirements are met: first, the policy statement contains a clear promise from which an employee could reasonably believe an offer had been made; second, the statement is disseminated to employees such that they are aware of the policy and could reasonably believe it is intended as an offer; and third, the employee begins or continues working after learning of the policy. *Duldulao*, 115 Ill. 2d at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318. Morgan's claim fails the first two elements of this test.

Contrary to the first requirement, Harris's manual expressly states, "[e]mployment with the bank is at will, meaning that employment may be terminated by the bank or employee at any time, without restrictions. Nothing in this manual is intended or should be construed as altering the employment at will relationship." Two similar disclaimers appear elsewhere in the manual.[4] As to the second requirement, the manual was not generally distributed, and although Morgan was aware of its contents, he offers no evidence of how he could reasonably have believed it was intended as an offer in light of the numerous disclaimers already discussed.

## V. Conclusion

For the foregoing reasons, the district court's grant of summary judgment, sustained on motion for reconsideration, is

AFFIRMED.

---

4. One disclaimer admonishes that the manual is not intended to create any contractual or other legal rights, but is designed solely as a guide for supervisors and managers, while another reiterates that the bank may terminate an employee at any time with or without cause.