**PERU DAILY TRIBUNE, Nixon Newspapers, Inc. and Nixon Enterprises, Inc., Appellants (Defendants Below),**

v.

**Toni SHULER, Appellee
(Plaintiff Below).**

No. 52A04–8809–CV–307.

Court of Appeals of Indiana,
Fourth District.

Oct. 11, 1989.

Jeffrey G. Price, Peru, for appellants.

Donald G. Fern, Fern, Grund & Grund, Peru, for appellee.

CONOVER, Judge.

Defendants–Appellants Peru Daily Tribune and Nixon Newspapers, Inc., owners of The Tribune (collectively the Appellants), appeal the trial court's judgment on the issues of compensatory damages, punitive damages, and wrongful discharge.

We affirm.

Appellants present the following restated issues for our review:

1. whether there was sufficient evidence to support the judgment against NNI,

2. whether there was sufficient evidence to support the award of punitive damages,

3. whether the court erred in presenting court's final instructions 4 and 9 to the jury,

4. whether there was sufficient evidence of causation to support the claim of wrongful discharge, and

5. whether the trial court erred in refusing Appellant's tendered instruction 2.

Toni Shuler (Shuler) was hired by the Appellants in April, 1985, as a part-time sales representative. Shuler fell and hurt her knee while working but did not leave work, believing her injury was minor. She is uncertain of the date of her injury. However, in July she sought medical treatment for her knee. That same day, Shuler informed the proper persons at the Tribune she needed to file a workman's compensation claim. The Tribune filed a report with the Industrial Board and began processing the claim for benefits with its workman's compensation insurance carrier later that day.

Shuler then visited an orthopedic surgeon who scheduled exploratory surgery. Shuler returned to the Tribune the next day and told David Sutton (Sutton), her supervisor, of her upcoming surgery. Sutton asked how serious her injury was and how long she would be unable to work. Later that morning, Sutton told Shuler she was not going to work out; in effect, she was fired. Sutton explained her termination was not due to her knee injury. Rather he could not afford to have a salesperson off work. Shuler said she wanted to continue at the Tribune, but Sutton said there were no other positions open.

During her employment, Shuler was never formally reprimanded, or disciplined for unsatisfactory work or violating company policy, but on one occasion had been informally reprimanded for being late to work without calling. She was never given a written job performance evaluation, never told of substandard performance, or failure to make sales quotas until she was terminated. In fact, she had been repeatedly commended for her job performance.

In March of 1987, nearly two years and three surgeries after her termination, Shuler's doctor released her to return to a desk job. Shuler sought employment with the Tribune and Sutton's replacement told her, after he spoke with the CEO, there were no openings for her. Shuler asked for a written refusal and was denied.

Her attorney requested reinstatement and an explanation of discharge. The Tribune's attorney indicated Shuler was discharged for cause which, according to the policy manual, is noncompliance with personnel policy and set standards. The Tribune never provided any records of Shuler's alleged noncompliance.

A jury trial was held and Shuler was awarded $7,850.50 in compensatory damages for wrongful discharge and $15,000.00 in punitive damages. The Appellants now appeal. A third defendant, Nixon Enterprises, Inc. was granted judgment on the evidence and is not a party to this appeal.

Additional facts as necessary appear below.

■ NNI contends the evidence was insufficient to support the judgment against it. NNI suggests Shuler failed to present any evidence of NNI employment, since Shuler's W–4 Employee's Withholding form and other miscellaneous evidence names the Tribune as her employer, and therefore the claim against NNI must fail. We disagree.

When reviewing the sufficiency of the evidence in a civil case, we determine whether there is substantial evidence of probative value supporting the trial court's judgment. We neither weigh the evidence nor judge the credibility of witnesses, but consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. Only when there is a lack of evidence or reasonable inference on an essential element of the plaintiff's claim will we reverse a trial court. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904; *F.D. Borkholder Co., Inc. v. Sandock* (1980), Ind., 274 Ind. 612, 413 N.E.2d 567, 569. Furthermore, while a jury verdict may be overturned if it is legally or logically inconsistent, contradictory, or repugnant, courts will indulge every reasonable presumption in favor of the legality of a jury's verdict. *Emerson v. Markle* (1989), Ind.App., 539 N.E.2d 35, 39, *trans. pending.*

In Indiana, the general test of the existence of a master servant relationship is the right to direct and control the conduct of the servant. *Gibbs v. Miller* (1972), Ind. App., 152 Ind.App. 326, 283 N.E.2d 592, 595, *trans. denied.* "Right to control" means the right, not the exercise of control. *Id.* Among the indicia of a master servant relationship are the right to discharge, mode of payment, provision of tools or supplies by the employer, belief by the parties a master-servant relationship exists, control over the means used or result reached, length of employment and establishment of work boundaries. *Furr v. Review Bd. of Ind. Emp. Security Div.* (1985), Ind.App., 482 N.E.2d 790, 794; *Gibbs, supra.*

Here, the record reflects Shuler presented several exhibits addressing the issue of NNI employment. She introduced two employee status reports with the Nixon Newspapers, Inc. heading, one designating Shuler as a new hire, the other dated the day Shuler was discharged. She also introduced an employment application bearing the Nixon Newspapers, Inc. heading and several notations indicating the application was for employment with NNI. (R., p. 346 (B–D)). The jury had ample evidence from which to conclude Shuler was employed by NNI as well as the Tribune.

■ Appellants next contend the punitive damage award is not supported by sufficient evidence. Appellants contend their conduct did not rise to the reprehensible standard necessary to support a punitive damage award. We disagree.

Punitive damages must be supported by clear and convincing evidence. *Traveler's Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 363. Evidence must overcome the presumption the defendant's conduct was merely negligent or the result of some honest error. *A.B.C. Home & Real Estate Inspec. v. Plummer* (1986), Ind.App., 500 N.E.2d 1257, 1263, *reh. denied.* Punitive damages are recoverable only upon clear and convincing evidence the defendants acted with malice, fraud, gross negligence, or oppression which did not result from mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other human failing. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137, citing *Traveler's Indemnity, supra,* at 362. The defendant is cloaked with the rebuttable presumption his actions, though perhaps tortious, were nevertheless noniniquitous human failings. *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1023. Punitive damages are not compensatory in nature but are designed to punish the wrongdoer and deter similar conduct in the fu-

ture. *Orkin, supra,* at 1022. The sole issue is whether defendants' conduct was so obdurate they should be punished for the benefit of the general public. *Id.*

Here, Shuler told Sutton of her injuries and need for treatment. She was never given any indication her performance was substandard or her job was in jeopardy. The same day Shuler told Sutton she needed surgery and time away from work, Sutton terminated her employment. Shuler testified Sutton claimed he could not afford to have a salesperson off work. When her doctor released her to return to work, Shuler sought reemployment at the Tribune and was refused. Shuler's attorney requested reinstatement and an explanation of discharge. The Tribune attorney replied Shuler was discharged for cause; however, there are no records of Shuler's alleged noncompliance with Appellants' policies or standards.

The jury reasonably found evidence of obdurate and oppressive behavior. Shuler's discharge did not result from noniniquitous human failing, mere negligence, or honest error in judgment.

■ Appellants next contend the trial court erred in admitting court's final instructions 4 and 9. Appellants assert the admitted instructions are incorrect statements of law since they do not mention a defendant is cloaked with a presumption of innocence. We disagree.

The choice of instructions is largely within the trial court's discretion. *Gross v. State* (1987), Ind., 506 N.E.2d 17, 20. We will reverse only for an abuse of discretion. *Id.* When we review instructions, we determine if the tendered instructions correctly state the law, whether the law, facts, and evidence require the instruction, and whether the theme of the instruction is covered by other instructions given. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486, 492.

In *Bud Wolf, supra,* our supreme court discussed the appellate court's rehearing regarding punitive damage instructions:

The rehearing opinion then implied that punitive damages instructions should separately tell the jury that a defendant is cloaked with the presumption of non-culpability, that evidence had to exclude every reasonable hypothesis of innocent conduct, and that the jury must find malice before awarding punitive damages. We disagree.

Then it held a punitive damage instruction may be given despite the absence of language connoting the defendant's non-culpability.

Here, court's final instructions 4 and 9 clearly state the evidence must be clear and convincing before the jury may award punitive damages. Additionally, courts final instruction 4 fully defines the terms malice, intent and oppression. These instructions are correct statements of the law and were properly given to the jury.

■ Appellants contend the evidence was insufficient to support Shuler's wrongful discharge claim. We disagree.

In Indiana, an employment relationship is terminable at the will of either party unless there is a promise of employment for a fixed duration or consideration is given by the employee in addition to services. *Streckfus v. Gardenside Terrace Co-op., Inc.* (1985), Ind.App., 481 N.E.2d 423, 425. An employee at will may be discharged without cause. *Pepkowski v. Life of Indiana Ins. Co.* (1989), Ind., 535 N.E.2d 1164, 1168. However, if the discharge is for exercising a statutorily conferred right an exception to this general rule must be recognized. *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425. Filing a claim for workman's compensation is a statutorily conferred right. *Id.* 297 N.E.2d at 427. In *Frampton,* our supreme court recognized a cause of action for wrongful discharge where an employee is discharged in retaliation for the employee's filing a worker's compensation claim for a job-related injury.

Here Shuler injured her knee on the job, filed her worker's compensation claim, and scheduled necessary surgery. She told her superior she would be off work for surgery and was discharged, no cause given. No records were subsequently produced indicating substandard performance.

■ The issue of retaliation is one for the trier of fact. The jury's determination stands unless no reasonable jury could

have reached that result given the evidence before it. *Emerson, supra.* Substantial evidence supports Shuler's wrongful discharge claim.

■ Appellants lastly contend the trial court erred in refusing their tendered instruction 2 which contained the "but for" test adopted by our supreme court for retaliatory discharge cases. They claim because of its refusal, the jury was erroneously instructed. We disagree.

When reviewing the refusal of a tendered instruction, this court determines whether it correctly states the law, whether the law, facts, and evidence require the instruction, and whether the instruction is covered by other instructions actually given. *Bergfeld, supra,* at 492.

Appellants correctly argue Shuler has the ultimate burden to persuade the trier of fact the Appellants intentionally discriminated against her. *Civil Rights Com'n. v. Culver Ed. Found.* (1989), Ind., 535 N.E.2d 112, 115. Shuler must show but for exercising her statutorily conferred right to claim workman's compensation benefits, she would not have been discharged.

Here, the "but for" test contained in Appellants' tendered instruction 2 was fully presented to the jury in the court's final instruction 1, which provided:

> In order to recover under this claim ... Shuler has the burden of proving, by a preponderance of the evidence that:
>
> . . . . .
>
> 3. ... the cause of Plaintiff's discharge was her making and filing a claim or request for workman's compensation benefits....

(R. 136). This instruction adequately summarizes the "but for" test. We find no reversible error in the court's refusal of Appellants' tendered instruction 2.

Affirmed.

RATLIFF, C.J., and MILLER, J., concur.