**Shirlee L. HAMANN,**
**Plaintiff–Appellant,**

v.

**GATES CHEVROLET, INC.,**
**Defendant–Appellee.**

No. 89–2465.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1990.

Decided Aug. 15, 1990.

Rehearing and Rehearing En Banc
Denied Sept. 14, 1990.

Robert J. Palmer, E. Spencer Walton, Jr., Lance M. Clark, May, Oberfell & Lorber, South Bend, Ind., for plaintiff-appellant.

Douglas D. Small, Seth D. Linfield, Barnes & Thornburg, John T. Mulvihill, South Bend, Ind., for defendant-appellee.

Before WOOD, Jr., and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Indiana is an "employment at will" state. *See, e.g., Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933, 934 (Ind.1986); *Ryan v. J.C. Penney Co.*, 627 F.2d 836 (7th Cir.1980). Generally, employers may terminate employees for no cause whatsoever or for any cause at all without incurring liability. *E.g., Call v. Scott Brass, Inc.*, 553 N.E.2d 1225, 1227 (Ind.Ct.App.1990); *Lawson v. Haven Hubbard Homes, Inc.*, 551 N.E.2d 855, 860 (Ind.Ct.App.1990); *Wilmington v. Harvest Ins. Cos.*, 521 N.E.2d 953, 955 (Ind.Ct.App.1988); *Rice v. Grant County Board of Comm'rs*, 472 N.E.2d 213, 214 (Ind.Ct.App.1984). "Generally," however, is not always. There are exceptions to the general rule. One of them is the "refusal to act illegally" retaliatory discharge exception: If an employer fires an employee in retaliation for the employee's refusal to commit an illegal act for which the employee would be personally liable, the employee may successfully sue the employer. *See McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind.1988).

This diversity case concerns the "refusal to act" exception. Shirlee Hamann says that her former employer, Gates Chevrolet, Inc., fired her in retaliation for her refusal to commit illegal acts for which she would be personally liable, *i.e.*, the altering, or aiding, inducing, causing, or agreeing to the altering, of certificates of title. Gates says otherwise. In the district court, the issue came to a head on Gates's motion for

summary judgment. For the district court's ruling below [1], 723 F.Supp. 63, and our ruling on this appeal, Gates has conceded that Hamann's version of the facts are true. Those facts follow.

Hamann was hired by Gates on December 7, 1982. Originally, her job was in the title department, her position that of a title clerk. After several months she was reassigned to Gates's accounting department, where she obtained a job handling Gates's accounts payable. Despite her place in the accounting department, Hamann occasionally worked in the title department, where she processed titles (certificates of origin, or "CO's") and assisted title clerks in the performance of their job responsibilities. Part of these responsibilities, apparently, was the altering of titles, the forging of signatures, and the notarizing of false documents, all of which is illegal. At the behest of her superiors, Hamann joined in this unhappy activity. Soon, however, she refused to participate. She notified her superiors, among whom were Sam Sweeden (Gates's general manager) and Mike Wheeler (Gates's used car sales manager), and told them that she would no longer perform illegal acts.

Despite this notification, Hamann still was asked to participate in title alterations. Around October, 1983, she was asked to notarize a group of 28 altered CO's. She refused. During the next two years Hamann similarly was asked on an additional 10 to 20 occasions. Ten to 20 more times, she refused. Yet Hamann was not fired. She

peacefully coexisted with Gates's management.

In September, 1985, Hamann was approached by Cindy McMillan,[2] a Gates employee. McMillan had been asked by either Sweeden or Wheeler to obtain a title for Gates by illegally removing from the title multiple assignments. McMillan was unsure of what to do; she went to Hamann for advice. Hamann advised McMillan that "jumping title" was wrong. Further, Hamann telephoned Patti Guskowski, an employee of Downtown Gates, which is a separate but related Gates business entity. Hamann told Guskowski about the illegal methods by which Gates's title clerks obtained "clean" titles for Gates. Guskowski opined that those methods were illegal and that McMillan should not employ them to remove the assignments. Guskowski stated that she needed to speak to someone, that she would call Hamann back, and that in the interim Hamann should do nothing. After the call Hamann returned the title to McMillan, presumably with Guskowski's opinion. Hamann had no further contact with either McMillan or Guskowski. She was never informed about how the title ultimately was processed.

About a month later, on October 3, 1985, Hamann was fired. She was called into Sweeden's office and asked several questions by Sweeden, one of which was whether Hamann had telephoned Patti Guskowski at Downtown Gates. Hamann said that she had; Sweeden said that Hamann had a problem. At that, Hamann's employment ended.[3]

**1.** In addition to the motion for summary judgment, filed by Gates on March 14, 1989, there was a motion to alter or amend the judgment, filed by Hamann on April 27, 1989. Both motions were fully briefed. Gates's motion was granted. Hamann's motion was denied. From here on we will speak of the district court's reasoning on both motions simply as that applied to Gates's motion for summary judgment.

**2.** Also referred to in the parties' briefs as Cindy King.

**3.** Gates's version of the purported discharge is different. It also is somewhat confused. Sweeden testified that Hamann was not "technically fired." According to Sweeden, Hamann came into his office and told him that she could no

longer work for Bill Day, her supervisor. Sweeden responded that he could not go over Day's head; if Hamann could not work for Day, she could not work for Gates. At that point, Hamann left and was seen no more. Bill Day's testimony, however, indicates that Sweeden was planning to fire Hamann. Day had talked to Sweeden the morning of Hamann's discharge. Sweeden told Day that Hamann had said something that irked him, and that she would have to be fired. Moreover, Day's note to Hamann's employment file indicates that Hamann was terminated by Sweeden, not that she quit. In any case, it is not Gates's position that Hamann quit, but rather that she was fired, and fired for a bad attitude and a lack of productivity.

As previously mentioned, Gates has conceded Hamann's version of the facts. It has not, however, conceded the reasonable inferences that may be drawn from those facts, and therein lies this dispute. In order to make out a claim for retaliatory discharge, a plaintiff must allege and prove more than that she was fired; she must allege and prove that her firing *was caused* by a prohibited retaliatory motive. *See McClanahan*, 517 N.E.2d at 393. Without the requisite causation there might be a discharge, but not an actionable discharge. Hamann argues that a reasonable inference from the above stated facts is that her firing was caused by Gates's retaliation for her refusal to illegally alter titles. Gates argues that such an inference is mere speculation and that the most a rational juror could deduce from the facts above is that Hamann was fired for telling Patti Guskowski about Gates's title activities. Upon Gates's motion for summary judgment, the court below concluded that Hamann had failed to bring forth evidence from which a rational juror reasonably could infer that Gates's motive in firing her was to retaliate for her refusal to do something illegal. Consequently, it granted summary judgment in favor of Gates.[4]

■ Hamann argues that the court erred. In three ways, she asserts, the evidence implies the existence of Gates's illicit motive. First, she asserts that Gates's illicit motive is shown by the mere fact that she was fired, coupled with the fact that for two years prior to the McMillan incident she had refused to alter or notarize titles illegally (or counsel others to do so). But this is not enough. In Title VII cases, which seem to be analogous, *see Indiana Civil Rights Comm'n v. Culver Ed. Found.*, 535 N.E.2d 112, 115 (Ind.1989);

*Peru Daily Tribune v. Shuler*, 544 N.E.2d 560, 564 (Ind.Ct.App.1989), a plaintiff must show three things to establish a case of retaliatory discharge: (1) that (among other things) she opposed an unlawful employment practice; (2) that she was the object of adverse employment action; and (3) that the adverse employment action was caused by her opposition. *See Klein v. Trustees of Indiana University*, 766 F.2d 275, 280 (7th Cir.1985); *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir. 1982). The third requirement—causation—would seem to be a superfluous element if causation could be inferred from the first two. Of course, the causation element is not superfluous: it is there for a reason. Thus, causation must be proved in its own right; its existence cannot be bootstrapped from the existence of the other two elements. Before a Title VII retaliatory action claim can pass a summary judgment challenge, then, facts other than those showing opposition and discharge must be adduced. *See Klein, supra. See also Collins v. Illinois*, 830 F.2d 692 (7th Cir.1987) (j.n.o.v.). We think the same goes for a Indiana state law retaliatory action claim. There must be facts of a "causal connection" between the refusal to act and the discharge, facts other than the refusal and the discharge themselves. But Hamann has shown us little else. Besides the fact of her refusals and her discharge, all Hamann points us to is the timing between the two.

When considered with other circumstances, the fact of "rapidity and proximity in time" between refusal and discharge sometimes can create the necessary inference of prohibited motive. *See, e.g., Collins*, 830 F.2d at 705. But there is no such "rapidity and proximity" in this case.

---

**4.** The issue of causation or "retaliation" generally is one for the trier of fact, as are most issues of motive and intent, but not always. Upon a motion for summary judgment, when the only issue before the court is the range of rational inferences—including inferences of motive or intent—that can be drawn from undisputed facts, a court in one instance may resolve the case. *See Corrugated Paper Prod., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.1989). In cases of this kind that one instance is this: when the evidence is such that no reasonable or rational trier of fact could conclude that a discharge was caused by prohibited retaliation. *See Peru Daily Tribune v. Shuler*, 544 N.E.2d 560, 563–64 (Ind.Ct.App.1989). *Accord Klein v. Trustees of Indiana University*, 766 F.2d 275 (7th Cir.1985). *See also Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570, 1572–73 (7th Cir.1989); *Morgan v. Harris Trust & Sav. Bank*, 867 F.2d 1023, 1026 (7th Cir.1989); *Powers v. Dole*, 782 F.2d 689 (7th Cir.1986).

Hamann refused to notarize altered titles over two years before she advised McMillan, and she continued to refuse—10 to 20 times in fact—during the two year time period before she advised McMillan. Despite these refusals, Gates took no action against Hamann during this period. To us, this indicates that Gates could care less about Hamann's ethical stance. Hamann argues otherwise, however, claiming that these "timing" facts actually support her case, that they give rise to an inference that her continued opposition wore Gates's tolerance thin. We admit that the inference is there: hypotheses are free; a thousand can arise to explain any event. But our job is to determine if the hypothesis proffered is reasonable. Hamann's certainly is not. The "timing" evidence cuts against her; it shows the opposite of what she claims. *Cf. Clark v. Chrysler Corp.,* 673 F.2d 921, 930 (7th Cir.), *cert. denied,* 459 U.S. 873, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982). Like the district court, we think that the timing of Hamann's refusals and her discharge fails to give rise to any reasonable inference that Hamann was fired because she refused to participate in the illegal alteration of titles.

■ Hamann asserts, secondly, that the necessary inference is raised by "the Cindy McMillan incident." The district court found from the facts that it was reasonable to infer that Hamann's discharge was caused by "her involvement in the incident with Cindy McMillan and specifically her telephone call to Patti Guzowski [sic]." But the court found that the McMillan incident involved no refusal by Hamann to commit illegal acts—indeed, she had not been requested by anyone to do anything illegal, so she could not possibly have refused. Hence, Hamann's discharge, if caused by retaliation for the McMillan incident, was not caused by a *prohibited* retali-

atory motive. The district court's finding is obviously correct: Hamann was not asked to alter a title; she was not asked to aid, induce, or cause anyone to alter a title; and she was not asked to conspire to alter a title. She was merely asked to render advice on whether jumping title was the right or wrong way to process a CO. Rendering advice is not a crime and, in any case, Hamann did not refuse McMillan's request.[5]

■ Hamann's third assertion is that she need not present evidence directly implying the necessary inference of causation, but instead may rely on evidence doing so indirectly, evidence showing that Gates's proffered reasons for her firing are pretextual. We agree with the general concept that a plaintiff may survive a motion for summary judgment if the defendant proffers a reason for the plaintiff's firing that is patently inconsistent with the evidence before the court. *See Pepkowski v. Life of Indiana Ins. Co.,* 535 N.E.2d 1164, 1168 (Ind.1989) (if defendant's reasons for discharge conflict with the facts, defendant has failed to carry its summary judgment burden of showing an absence of genuine issue of material fact). *Accord Klein v. Trustees of Indiana University,* 766 F.2d at 282 (concerning Title VII). But Gates's proffered reasons for Hamann's firing—"bad attitude" and "lack of productivity"—are not patently inconsistent with any evidence. Hamann points to isolated deposition testimony indicating that Hamann did good work when she was transferred to the accounting department, that she did good work in 1983, that she was truthful, that she was nice to title clerks and got along well with them, that a title clerk thought Hamann was a good worker, and that Bill Day would "probably not" have fired Hamann in October, 1985. But this isolated

---

**5.** Hamann argues that the McMillan incident involved a refusal to commit a crime. Her reasoning is as follows: Hamann's job responsibility was to assist the title clerks in preparing titles in accordance with their supervisor's wishes; McMillan's supervisor wished McMillan to prepare a title illegally; Hamann did not assist McMillan in preparing the title illegally; *ergo,* Hamann refused to do something illegal.

To us, this is a *non sequitur.* Not doing something and refusing to do something are two different things: the latter necessarily involves a request whereas the former does not. Here, there was no request, and no refusal. Consequently, there can be no reasonable inference that Hamann was discharged because she refused to do something illegal.

deposition testimony fails to light up any patent inconsistency in Gates's reasons. Doing good work in 1983 is not the same as doing good work in 1985, initial competence is not the same as improvement or productivity, good relations with co-workers is not the same as good relations with management, and Bill Day's opinion is not the same as Sam Sweeden's. Moreover, it seems clear that Gates's reasons are consistent. It appears most likely from the evidence that Hamann spread discomfort with the alteration of titles among title clerks and that she spread news that Gates was altering titles among persons outside of Gates. From a management perspective, "bad attitude" and "lack of productivity" are apt phrases to describe this behavior, and the apt motive to ascribe to Gates is retaliation for Hamann's "bad attitude" and "lack of productivity." Gates's motive is consistent with the evidence. Admittedly, the motive is a poor one. But it is not so poor that it creates a claim for retaliatory discharge under Indiana law. *See, e.g., Campbell v. Eli Lilly & Co.,* 413 N.E.2d 1054 (Ind.Ct.App.1980), *transfer denied,* 421 N.E.2d 1099 (Ind.1981); *Martin v. Platt,* 179 Ind.App. 688, 386 N.E.2d 1026 (1979).

Gates's reasons for Hamann's firing are not patently inconsistent with the evidence. Hamann, therefore, has failed to adduce evidence that indirectly gives rise to a reasonable inference that she was fired because of her refusal to commit illegal acts. She similarly has failed to adduce evidence that directly gives rise to the necessary inference. Summary judgment for Gates, then, was proper. Hamann's appeal must fail.

AFFIRMED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

The majority opinion fairly sets forth the issues and evidence. I respectfully dis-agree, however, with the result, although I recognize the strength of Indiana law.

Considering all the evidence as a whole I do not believe it to be unreasonable to view Hamann's discharge as sufficiently related to her refusal to advance the allegedly illegal activities of her employer. I think this situation is too much for summary judgment. I would prefer to let a properly instructed jury sort it out.