In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-2467 and 01-2531

MARK A. MACK,

*Plaintiff-Appellee*,
*Cross-Appellant*,

*v.*

GREAT DANE TRAILERS,

*Defendant-Appellant*,
*Cross-Appellee.*

Appeals from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. TH 98-C-303—**Larry J. McKinney**, *Chief Judge.*

ARGUED APRIL 8, 2002—DECIDED OCTOBER 22, 2002

Before BAUER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After he was discharged from his job, plaintiff Mark Mack sued his employer, defendant Great Dane Trailers, for violation of the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.* (ADA), and for retaliatory discharge under Indiana law. The district court granted summary judgment in favor of Great Dane on Mack's state law claim, but denied summary judgment on Mack's ADA claim that Great Dane discriminated against him because it mistakenly regarded him as disabled. The jury found in Mack's favor on the ADA claim, and both parties appeal. We agree with Great Dane that, on the ADA claim, there was insuf-

ficient evidence from which a jury could reasonably find that Great Dane regarded Mack as substantially limited in any major life activity and that the district court erred in denying Great Dane's motion for judgment as a matter of law. We also conclude that there was insufficient evidence that would support an inference that Mack was discharged for filing for workers' compensation and therefore affirm the district court's grant of summary judgment in favor of Great Dane on Mack's state law claim for retaliatory discharge.

## I. BACKGROUND

Mack worked as an assistant trailer builder, which involved many tasks that required long periods of kneeling and squatting. After less than a month on the job, Mack developed pain in his leg and Great Dane sent him to see Dr. Daria Schooler. Dr. Schooler diagnosed acute right peroneal neuropathy, commonly referred to as drop foot. A month after his injury, Dr. Schooler determined that Mack could return to sedentary work if transportation to work was provided. As his condition improved, she eased the restrictions but cleared him for work only in areas of the plant that do not require the use of heavy steel-toed work boots and prohibited kneeling and squatting. These restrictions were repeated in Dr. Schooler's reports during the following months and in her handwritten report of November 2 (received by Great Dane on November 12). In a typewritten report accompanying the November 2 report, Schooler stated that Mack "may have plateaued" in his recovery, but "could potentially return to work if he had a permanent work restriction of no lifting and if a custom work boot could be manufactured. . . ." In her final report on November 30, Dr. Schooler determined that Mack had reached maximum medical improvement from his injury, and released him for a return to

work with permanent restrictions of no kneeling or squatting and if he obtained the suggested custom work boot.

During this time, Mack was on workers' compensation leave and received total temporary disability benefits. Mack repeatedly asked Great Dane to return him to work and was told that there was no available work within his restrictions. Great Dane discharged Mack effective November 12, 1997, thirteen months after his disability leave began. His temporary disability benefits continued for another month. At a meeting on November 30, Great Dane managers told Mack that he had been discharged pursuant to a company policy under which an employee who is absent more than one year is terminated.

Mack filed suit alleging violations of the ADA and state law claims for wrongful termination and intentional infliction of emotional distress. On cross motions for summary judgment, the district court granted judgment in favor of Great Dane on Mack's state law claims and his claim that he was disabled under the ADA. It denied, however, Great Dane's motion as to Mack's "regarded as disabled" claim. That claim went to trial and the jury rendered a verdict in favor of Mack. The court denied Great Dane's Rule 50(b) motion for judgment as a matter of law and entered judgment on the verdict.

## II.  ANALYSIS

A.  Americans with Disabilities Act

We review the district court's denial of Great Dane's motion for judgment as a matter of law de novo. *Emmel v. Coca Cola Bottling Co. of Chicago*, 95 F.3d 627, 629-30 (7th Cir. 1996). We must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to

the party against whom the motion is directed." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992).

An individual is disabled within the meaning of the ADA if she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A); *see also Sutton v. United Airlines, Inc.*, 527 U.S. 471, 478 (1999). Mack does not contend on appeal that his impairment is substantially limiting. But the ADA also protects from discrimination individuals who are "regarded as" having a disability, *see* 42 U.S.C. § 12102(2)(C); *Sutton*, 527 U.S. at 489, and it was on this theory that Mack's ADA claim was submitted to the jury. To fall within the statutory definition of one "regarded as disabled," the plaintiff must show that:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Sutton*, 527 U.S. at 489. Under either formulation described in *Sutton*, the plaintiff must show that the defendant believes she is "substantially limited" in a "major life activity." *Id.*; 42 U.S.C. § 12102(2)(A) & (C).

Mack's claim is that Great Dane believed that he was substantially limited in the major life activity of "lifting."[1] All agree that Great Dane believed that Mack's physical

---

[1] According to EEOC regulations, lifting is a major life activity. 29 C.F.R. pt. 1630.2(i); *see also Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 21 (1st Cir. 2002). Great Dane does not argue otherwise, so we proceed under the assumption that it is. *But see Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002) (expressing doubt that lifting more than 10 pounds is a major life activity).

condition limited his ability to lift items at work. An impairment that interferes with work-related tasks, however, does not necessarily rise to the level of a disability within the meaning of the ADA. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681 (2002). In *Toyota*, the Supreme Court rejected the employee's claim that her carpal tunnel syndrome, which made it impossible to perform certain manual tasks on the job, was a substantial limitation on a major life activity. The Court concluded that the inability to perform many tasks associated with a particular job (in that case, "repetitive work with hands and arms extended at or above shoulder levels for extended periods of time") would have only limited relevance to the inquiry of whether the impairment was substantially limiting because those tasks might not be an important part of most people's daily lives:

> When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job.

*Id.*, 122 S. Ct. at 693. The Court held that evidence that plaintiff was unable to do specific job-related duties was insufficient proof of a disability. *Id.*

Mack contends, however, that *Toyota* is distinguishable in two respects: first, because the major life activity at issue there was performing manual tasks—not lifting—and second, because *Toyota* involved a claim of actual disability. We see no basis for confining *Toyota's* analysis to only those cases involving the specific life activity asserted by the plaintiff in that case. *See EEOC v. United Parcel Serv., Inc.*, ___ F.3d ___, Nos. 01-15410, 01-15976, 01-15977, 2002 WL 31096703, at *7 (9th Cir. Sept. 20, 2002) (applying *Toyota* to major life activity of

seeing). *Toyota's* point was that an inability to perform "occupation-specific" tasks does not necessarily show an inability to perform the central functions of daily life, 122 S. Ct. at 693, and that analysis applies equally to the work-related restriction at issue here. An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life. *See Mays,* 301 F.3d at 869. There may well be cases in which, because of the nature of the impairment, one could, from the work-restriction alone, infer a broader limitation on a major life activity. An inability to lift even a pencil on the job might suggest an inability to lift a toothbrush, for example, or to otherwise care for oneself—or at least might support an inference that the employer believed the employee was so limited. But the work restriction in this case was not nearly of that nature, and instead fits neatly into the sort of occupation-specific limitation at issue in *Toyota. See Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 617 (8th Cir. 1997) (evidence that impairment limits work-related activities such as lifting does not demonstrate triable dispute regarding substantial limitation on major life activity); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1319 (8th Cir. 1996) (twenty-five pound lifting restriction, without more, does not constitute a significant restriction on ability to perform major life activities); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (same). Under *Toyota*, evidence of such a restriction, without more, is insufficient to show a substantial limitation on a major life activity.

Furthermore, while *Toyota* did not address a claim that the employee was regarded as disabled, its analysis still controls in this case. Under the ADA, the concepts of "substantially limits" and "major life activity" are the same whether the employee is proceeding under a claim that she is actually disabled or regarded as disabled. The

statute defines disability to include "being regarded as having such an impairment," 42 U.S.C. § 12102(2)(C)—the referenced impairment being that described in the definition of actual impairment. *See* 42 U.S.C. § 12102(2)(A). So if the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the "regarded as" prong of the statute. *See Sutton*, 527 U.S. at 489; *see also EEOC v. United Parcel Serv., Inc.*, 2002 WL 31096703, at \*7 (applying *Toyota's* analysis to "regarded as" claim); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996) ("As with real impairments, . . . a perceived impairment must be substantially limiting and significant.").

Applying these principles, we conclude that Mack's ADA claim fails as a matter of law. The parties dispute whether the evidence showed that Great Dane regarded Mack as unable to *squat* to lift from the floor (Great Dane's version), or as unable to *lift* (Mack's version). But one thing is clear—all the direct evidence about Great Dane's knowledge of Mack's physical impairment concerned lifting restrictions related to his job and there is no evidence from which a jury reasonably could infer anything about Great Dane's belief about the extent of Mack's limitations as to tasks central to his daily life. For example, Mack relies on one of the neurosurgeon's reports received by Great Dane, which stated that Mack could return to work with a restriction of "no lifting" and if he wore a custom work boot. But even if the jury ignored the numerous other reports from the same doctor that identified the restriction as one on kneeling and squatting, the report itself demonstrates that the described restriction was in reference to the limitations at work and nothing more.

Aside from the reference to lifting in the doctor's report, Mack relies on the deposition testimony of Great

Dane's human resources manager that Mack's limitation was an "inability to lift and squat." This phrase was in response to a question about Mack's ability to keep his job and in the context of a discussion about his work-related restrictions. Even if the jury disbelieved the manager's explanation at trial that his response was limited to safely lifting objects from the floor (by squatting), no jury reasonably could conclude from this single reference to a discussion about work-related restrictions that Great Dane believed that Mack was substantially limited in the sort of lifting that is central to most people's daily life.

Finally, Mack asserts that there was circumstantial evidence from which the jury could have inferred that Great Dane regarded him as disabled. For example, Mack points out that another employee—one with a similar injury but with greater work-related restrictions—was allowed to return to work after an even lengthier leave of absence and that Great Dane modified the other employee's duties to accommodate his impairment. Mack also claims that the jury could have disbelieved Great Dane's reason for firing him based, for example, on the fact that his leave extended beyond a year and testimony that the human resources manager had some leeway to retain Mack longer if the restrictions were lifted.

Ordinarily the relevance of an employer's different treatment of two similarly situated employees, whose only relevant difference is on some characteristic that is an impermissible basis for disparate treatment, is that it supports an inference that the disparate treatment is because of that difference. *See Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). Similarly, a jury may, depending on the strength of the other evidence in the case, infer from evidence of pretext (*i.e.*, that the employer's stated reason is false) that the adverse job action was taken because of intentional discrimination. *See id.* at 736-

37; *cf. Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 487 (7th Cir. 2002).

In this context, however, Mack is using the comparative and pretext evidence to support an inference not just of causation—that his membership in the group protected by the statute was the reason he was treated differently—but also the antecedent inference that he was a member of that protected group, in other words, that Great Dane regarded him as disabled within the meaning of the ADA. This inference is illogical on the particular comparison offered by Mack. Mack compares himself to an employee with a similar injury but greater restrictions who was assigned light duty work after he sought accommodations. The fact that Great Dane accommodated the other employee but not Mack does not support the inference that it regarded Mack as disabled. It is equally likely, if not more likely, that Great Dane regarded the other employee as disabled and therefore accommodated him but not Mack.

Mack's pretext evidence, like his comparative evidence, is too weak to support an inference that Great Dane regarded him as disabled. Great Dane's failure to provide Mack with alternative job assignments is consistent with its assertion that it did not have work within his restrictions,[2] and Mack offered no evidence to the contrary.

---

[2] Mack argues that he could have performed the work of an assistant trailer builder, but there is no question that Great Dane would have had to make some accommodation—such as allowing him to work with a special work boot and excusing him from tasks requiring him to lift heavy objects. Accommodation is not required if the employee is not covered by the statute, *Szmaj v. American Tel. & Tel. Co.*, 291 F.3d 955, 956 (7th Cir. 2002), so Great Dane's failure to accommodate his restrictions does not suggest that its reason for firing him was false or that

(continued...)

The fact that Great Dane allowed the leave to continue beyond a year (until his restrictions were identified as permanent) and that it could have retained Mack longer if his restrictions had been temporary does not support an inference that its stated reason for firing him was false. Accordingly, we conclude that the jury could not reasonably find from Mack's circumstantial evidence that Great Dane regarded him as disabled.

We do not suggest that circumstantial evidence can never be used to show that an employer regarded an employee as disabled; the employer's perception of the employee's impairment is, like its intent to discriminate, a mental state and direct evidence may often be lacking. *See Troupe*, 20 F.3d at 736; *see also Pugh v. City Of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (employee may present direct or indirect evidence of discrimination under the ADA); *see generally Wright v. Ill. Dept. of Corrections*, 204 F.3d 727, 730-32 (7th Cir. 2000). But given *Toyota*, Mack needed some evidence, direct or circumstantial, from which a jury could conclude that Great Dane regarded him as substantially limited in activities central to most people's daily lives. The evidence does not support an inference that Great Dane believed that Mack's impairment was anything more than what it

---

[2] (...continued)
it regarded him as disabled. (Whether there is any duty to accommodate an employee who is not actually disabled but is regarded as disabled is a question we need not decide today. *Compare Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir. 1999) (holding that there is no requirement to accommodate), *with Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998) (suggesting such a requirement for employees with a record of a disability); *see also Deane v. Pocono Medical Center*, 142 F.3d 138, 148 n.12 (3d Cir. 1999) (en banc) (discussing but not deciding the issue).)

was—a limitation on his ability to do certain tasks on the job. Because the verdict was unsupported by the evidence, the judgment must be reversed.[3]

B.   Wrongful Termination

Under Indiana law, "[g]enerally, employers may terminate employees for no cause whatsoever or for any cause at all without incurring liability." *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1418 (7th Cir. 1990). One exception to this general rule is that an employee who has been discharged in retaliation for filing a claim for workers' compensation may recover damages for wrongful termination. *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425, 428 (Ind. 1973). To survive summary judgment on a *Frampton* claim, the plaintiff must present evidence that would support a finding that the discharge was caused by his filing for benefits. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 774 (7th Cir. 2002). Causation may not be inferred merely from evidence that (1) the employee filed for benefits and (2) was fired. *See Hamann*, 910 F.2d at 1420. Depending on the circumstances, however, causation may be inferred from the "rapidity and proximity in time" between the employee's filing for benefits and the discharge, *see id.*, or from evidence that the employer's proffered reason for the discharge is "patently inconsistent with the evidence before the court." *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999); *see Goetzke*, 280 F.3d at 774; *Hamann*, 910 F.2d at 1421. Mack asserts that the record at summary judg-

---

[3] Given our holding, we need not reach Great Dane's argument that the attorney's fee awarded on this claim was excessive or Mack's argument that the district court erred in granting Great Dane's motion for judgment as a matter of law on the issue of punitive damages.

ment contained both types of circumstantial evidence. We review the district court's grant of Great Dane's motion for summary judgment de novo. *See Goetzke*, 280 F.3d at 774.

By the time he was discharged, Mack had been receiving temporary disability benefits for more than a year, timing that tends to negate, rather than support, an inference of causation. *Goetzke,* 280 F.3d at 775 (holding that one-year lapse between filing for benefits and discharge does not support an inference of retaliatory intent); *cf. Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995) ("[T]he substantial time lapse between the events is counter-evidence of any causal connection."). Mack attempts to shorten the relevant time lapse by asserting that he "was fired on the very day his employer discovered the fact that Mack was going to end his worker's compensation claim"—that is, when Great Dane received Dr. Schooler's report suggesting that Mack's injury would not likely improve and that his work limitations would be permanent (a condition that signals the end of total temporary disability benefits, *see Kohlman v. Indiana University*, 670 N.E.2d 42, 43 (Ind. Ct. App. 1996)). But Mack has not explained how Great Dane's knowledge that his temporary disability payments would soon end supports an inference that it fired him for applying for benefits a year earlier.[4]

---

[4] The case upon which Mack relies for his argument that the relevant date is when the employer was notified that the employee's injury is permanent, *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366 (Ind. Ct. App. 1999), is easily distinguishable. In that case, although the court noted that the employee was fired the day after receiving an impairment rating, this occurred four months after his claim for benefits, much shorter than the one-year lapse in this case. *Id.* at 367, 370. Furthermore, the employee in *Dale*

(continued...)

Indiana courts have held, however, that more remote timing may, when coupled with other sufficient evidence, support an inference of retaliation. *See Goetz*, 280 F.3d at 775 (citing *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1167-68 (Ind. 1989) (six-month lapse)). To bolster his timing evidence, Mack points to evidence he claims casts doubt on Great Dane's stated reason for his discharge. At summary judgment, Great Dane submitted evidence describing its policy of terminating employees after a one-year leave and evidence that other employees were terminated according to that policy. Mack contends that the policy was not rigidly applied, pointing out that his leave actually lasted more than 13 months. But he offered no evidence at summary judgment that this practice was in any way unusual or inconsistent with Great Dane's policy, or that otherwise would give a jury a reasonable basis to conclude that the policy was not the real reason for his termination. Because there was insufficient evidence to support an inference that retaliation was the reason for Mack's discharge, summary judgment on this claim was proper.

## III. CONCLUSION

The district court's grant of summary judgment in favor of Great Dane on Mack's retaliation claim is AFFIRMED. The judgment entered on the jury verdict on Mack's ADA claim is REVERSED and the case is REMANDED.

---

[4] (...continued)
also proffered evidence that the medical restrictions were intended to be temporary, which called into question the employer's explanation that he was fired because the restrictions rendered him unable to do the job. The case therefore turned not on suspicious timing alone, but on suspicious timing combined with strong evidence of pretext.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*