Vicki S. WATKINS, Edna M. Harlson, Jerri L. Culvahouse, Helen M. Green, Carol F. Christmas, Pamela L. Porter, Plaintiffs,

v.

**SOMMER METALCRAFT CORP., Defendant.**

IP 92–1224 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 17, 1994.

Richard L. Darst, Mantel Cohen Garelick Reiswerg & Fishmann, Indianapolis, IN, for plaintiffs.

Stuart K. Weliever, C. Rex Henthorn, Henthorn, Harris & Taylor, Crawfordsville, IN, Lynn B. Jongleux, Sommer & Barnard, Norman T. Funk, Hill Fulwider McDowell

Funk & Matthews, P.C., Indianapolis, IN, for defendant.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

Plaintiffs were all employed by defendant. All of the plaintiffs except Helen Green allege that defendant discriminated against them in violation of Title VII and 42 U.S.C. §§ 2000e–2, 2000e–3, et seq., and that when plaintiffs opposed the alleged discrimination, defendant retaliated. Plaintiffs Vicki Watkins and Carol Christmas (nee Wilcox) also claim, along with plaintiff Helen Green, that defendant retaliatorily discharged them or laid them off when they filed their worker's compensation claims or mentioned their intent to do so.

Defendant has moved for partial summary judgment with respect to the claims of retaliatory discharge for filing worker's compensation claims made by Watkins, Christmas, and Green. For the reasons stated below, the motions are denied. Defendant has moved, in the alternative, for these claims to be severed for trial. For the reasons stated below, this motion is stayed and the trial date for this case is vacated, subject to resetting in accordance with the reasons explained below.

## I. BACKGROUND—The Facts Taken In The Light Most Favorable To Plaintiffs

### A. Vicki Watkins

Plaintiff Vicki Watkins began working for Crown Products, a division of defendant,[1] in early 1990. On August 15, 1990, Watkins injured her shoulder and back on the job. Watkins' supervisor, Jeff Emery, was on vacation at the time. Watkins reported the injury to another supervisor, but he did nothing. When Jeff Emery returned from vacation, he reported the incident, and Watkins went to the clinic approximately one week or so after the incident.

After the incident Watkins was put on light duty. However, defendant would not allow Watkins to stay within her medical restrictions. Watkins complained to defendant that her restrictions were not being honored, but the situation did not improve.

In April, 1991, Watkins' doctor put her on medical leave from work. Watkins returned to work on July 8, 1991, once again with medical restrictions. Once again, Watkins' medical restrictions were not honored by defendant. Her injury was thus exacerbated, and she was placed on medical leave on August 8, 1991. In December, 1991, Watkins received a lump sum settlement on her worker's compensation benefits.

In March, 1992, defendant received a letter from Watkins' doctor describing Watkins' medical restrictions for returning to work. Defendant then sent Watkins a letter stating that

> [t]he only positions Crown has that you might be able to safely and efficiently perform within your restrictions is [sic] in the Quality Control or Janitorial Departments.

Although Watkins repeatedly called defendant to check whether any jobs were available, defendant never recalled Watkins to work, and, according to defendant's summary judgment brief, "[a]fter July 2, 1992, Watkins was no longer considered for positions with Crown Products."

Watkins contends that she was not recalled to work in part as retaliation for filing her worker's compensation claim. She contends that there was another job for which she would have been qualified (sorting screws), and that defendant could have placed her in a quality control position, but chose not to. The quality control position at issue was not one in which there was an opening, but was one in which the worker assigned to it at the time did not have as much seniority as Watkins and would have been capable of filling a production job which Watkins could not.

Defendant contends that no position within Watkins' medical restrictions became available during the three month period (from

---

1. Crown Products and Sommer Metalcraft Corporation will be individually and jointly referred to as "defendant."

April 2, 1992 through July 2, 1992) in which defendant considered Watkins for employment. Defendant further contends that its failure to offer her any further employment ·is in no way a retaliation against her for filing a worker's compensation claim.

### B. Carol Christmas

Christmas went to work for defendant in 1978. In early 1991 Christmas was employed by defendant as a timekeeper. In April, 1991, Christmas was diagnosed as having carpel tunnel syndrome ("CTS"). Christmas asked her boss, Scott Sommer, how to file for worker's compensation and other general questions about how worker's compensation was awarded. In April, 1991, Christmas presented Sommer with a brochure that she had received from her doctor about CTS. In May, 1991, she wrote Sommer at least one note, asking him to get back to her with information about worker's compensation.

Sommer allegedly ignored her inquiries. He also stressed to Christmas that work was getting low. In her deposition, Christmas testified that Sommer "ignored me and wouldn't tell me what to do or get a form or whatever I had to have to file worker's comp, plus the fact it was a pattern of the company that if you got something wrong with you that was work related and you was a woman, you know, it wasn't—you was in trouble."

On July 25, 1991 Christmas' employment was terminated. The stated reason for her termination was a reduction in work force. According to defendant, the timekeeping position, previously held by Christmas, was restructured as a timekeeper/time-study position. The new timekeeper position was filled by Jim Vessels who was, according to defendant, "a 1½ year employee, who had shown aptitude for doing time-study duties, had proven to be efficient in timekeeper duties, and· was paid at a lesser hourly compensation rate than Christmas." Christmas filed her worker's compensation claim after she was terminated.

### C. Helen Green

Helen Green began working for defendant in early 1990. She was terminated for the first time in November, 1990. About a month later she was rehired.

On February 8, 1991, Green hurt her shoulder on the job. About three or four days later, Green returned to her same job. Green began experiencing the symptoms of CTS. Shortly thereafter, Green went on sick leave to be examined for CTS. Green's doctor diagnosed her condition as CTS. Green's doctor recommended her to a hand surgeon to treat the CTS.

After Green met with her doctor, a representative from Aetna, defendant's worker's compensation insurer, called Green. According to Green, the Aetna representative told her "that I wasn't going to the hand surgeon that [Green's doctor] wanted me to go to, I was going to her doctor." The Aetna representative had arranged an appointment with Dr. Klein and Green kept that appointment.

Green estimated that the appointment with Dr. Klein took ten minutes. Green testified that Klein told her, "you don't have carpal tunnel, it's not job related, [and] you better get back to work before you get fired." About a month after her appointment with Klein, Green returned to work. She worked for two or three weeks and then she was laid off (on April 2, 1991). She was told that she was being laid off as part of a work slow down. Throughout the summer of 1991 Green never was called back to work.

Green contends that she was laid off and never called back to work because of her worker's compensation claim. In support of this contention she offers the following: upon learning that Green had been diagnosed with CTS, defendant's personnel manager told Green that she couldn't work for defendant if she had CTS; and, Green's boss, Scott Sommer, told her at the time of the layoff that she would be the first worker recalled for work, but she was not called back when others were.

### II. DISCUSSION—Motion for Summary Judgment

■ Under Indiana law, an at-will employee may recover if she is terminated in retaliation for filing a worker's compensation claim; this rule was established in *Frampton*

v. *Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), and such claims have come to be known as "Frampton claims." Defendant has moved for summary judgment on the Frampton claims of plaintiffs Watkins, Christmas, and Green, made in Count II of the complaint.

### A. Summary Judgment Standard

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment should be denied. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### B. Defendant's "Solely" Argument

In the *Frampton* decision, the Indiana Supreme Court specifically held "that an employee who alleges he or she was retaliatorily discharged for filing a [worker's compensation] claim ... has stated a claim upon which relief can be granted." *Frampton,* 297 N.E.2d at 428. However, in conclusion, the Court also stated:

> [w]e agree with the Court of Appeals that, under ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged *solely for exercising a statutorily con-*

*ferred right* an exception to the general rule must be recognized.

*Id.* (emphasis added). It is upon this "solely" language that defendant has erected one of its arguments for summary judgment as to Watkins and Christmas.

Plaintiffs Watkins and Christmas have made claims that they were discharged from their employment with defendant *both* because of filing worker's compensation claims *and* because they were discriminated against on basis of sex. This dual reason for discharge, argues defendant, means that these plaintiffs are unable to make a Frampton claim. Defendant does not cite any authority, other than the specific passage above, in support of this proposition.

It is well settled that federal courts exercising pendent jurisdiction over a state claim must apply the law as that law would be applied by the state's highest court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The question of whether an employee being terminated for numerous impermissible reasons, including retaliation for filing a worker's compensation claim, precludes that employee from making a Frampton claim has not been addressed by the Indiana Supreme Court. However, the Indiana courts have applied the *Frampton* case for over twenty years. Therefore, we are able to anticipate how the Indiana Supreme Court would apply *Frampton* and its progeny in the instant case.

■ We conclude that the word "solely" as used in *Frampton* and its progeny was used to mean without an independent lawful reason which would justify the otherwise unlawful action. This is consistent with the way that *Frampton* has been applied. For instance, in *Smith v. Electrical Sys. Div. of Bristol Corp.,* 557 N.E.2d 711 (Ind.App.1990), an employee was discharged as the result of a neutral absence control policy. The injury which caused Smith's prolonged absence (such that the absence control policy required she be terminated) was also an accident for which Smith applied and received worker's compensation. *Id.* at 712. The court concluded that Smith was terminated as the result of the absence control policy, an independent lawful reason. *Id.* at 713.

Therefore, Smith was not entitled to recover against her employer. *Id.*

According to the Indiana Court of Appeals, one of the reasons for the *Frampton* rule is to prevent the employer from terminating the employment of one employee in a manner which sends a message to other employees that they will lose their job if they exercise their right to worker's compensation benefits.

*Stivers v. Stevens,* 581 N.E.2d 1253 (Ind.App. 1991), *trans. denied* (1992). This justification is not lessened where an employer terminates an employee in retaliation for filing a worker's compensation claim *and* for another legally impermissible reason. The reasoning in defendant's argument would necessarily lead to the conclusion that the Indiana courts meant to create an incentive for employers to terminate employees for numerous impermissible reasons. This we cannot permit.[2]

C. Causation

Defendant also argues that it is entitled to summary judgment with respect to the Frampton claims of Watkins, Christmas, and Green because they have not proven that they were terminated as a result of their worker's compensation claims. In support of its motion, defendant presents its version of why these plaintiffs were terminated.

■ "The issue of causation or 'retaliation' [in a retaliatory discharge claim] generally is one for the trier of fact." *Hamann v. Gates Chevrolet, Inc.,* 910 F.2d 1417, 1420 (7th Cir. 1990), *reh'g denied.* Actionable retaliation can take place where the employee is terminated for merely stating her intention to file a worker's compensation claim. *Stivers,* 581 N.E.2d at 1254.

■ Where causation is at issue in an Indiana state law retaliatory discharge claim, summary judgment is only appropriate "when the evidence is such that no reasonable or rational trier of fact could conclude that a discharge was caused by prohibited retaliation." *Hamann,* 910 F.2d at 1420 (cit-

ing *Peru Daily Tribune v. Shuler,* 544 N.E.2d 560, 563–64 (Ind.App.1989)). Where there are genuine issues as to whether an employee was retaliated against, summary judgment is not appropriate. *See Hillenbrand v. City of Evansville,* 457 N.E.2d 236, 237 (Ind.App.1983).

■ In order to survive a motion for summary judgment in a Frampton case, a plaintiff must show more than a filing of a worker's compensation claim and the discharge itself. *See Hamann,* 910 F.2d at 1421. In addition, the plaintiff must present evidence which either directly or indirectly implies the necessary inference of causation between the two acts. *Id.* Examples of indirect proof of causation include: a) proximity in time between the two acts, and b) an employer's proffered reason for termination which is patently inconsistent with the evidence before the court. *Id.* at 1420–21.

1. Medical Limitations—Vicki Watkins

Defendant contends that no positions within Vicki Watkins' medical limitations became available in the three months following her doctor's letter defining her medical limitations. To support this contention, defendant has submitted the affidavit of personnel manager Lynn Morgan with its motion.

Watkins does not dispute that no jobs became available in the janitorial or quality control departments within the three month period. Rather, Watkins argues that there was another production job that she could have done within her medical limitations (sorting screws). Also, Watkins contends that defendant could have reorganized its work force to place her into a quality control position. Finally, Watkins contends that the reason the defendant stopped considering her for a position after three months was because of her worker's compensation claim and this litigation.

Lynn Morgan's affidavit and its supporting materials make clear that Watkins was medi-

---

**2.** We note that the instant case is distinguishable from cases that have declined to create Frampton claims outside of the worker's compensation context where plaintiffs already have available remedies for the alleged wrongs that were done

to them. *See Helman v. AMF, Inc.,* 675 F.Supp. 1163, 1165 (S.D.Ind.1987); *Reeder–Baker v. Lincoln Nat'l Corp.,* 644 F.Supp. 983, 986 (N.D.Ind. 1986).

cally prohibited from engaging in repetitive motion for her wrists, arms, and shoulders. Therefore, there appears to be no genuine issue that she could not have been assigned to sort screws, if such a job existed.

■ Furthermore, Watkins has cited no authority for her novel proposition that an employer is obliged to reorganize its workforce in order to accommodate a worker who becomes medically restricted. Watkins was considered, for the statutorily required period of time, for positions consistent with her medical restrictions. Considering that Watkins went on medical leave of her own accord[3] and defendant has proven that it had no positions available for her when she was able to return, proof of causation seems to be lacking.

■ The only issue remaining is with defendant's decision to consider Watkins only for any positions that became available within three months of her being able to return to work. Defendant argues that "[a]n employer is not required to maintain an injured employees [sic] status for an indefinite period of time," but defendant offers no law to support this position. Defendant also tries to make the argument that Watkins was terminated for independent lawful reasons, such as the plaintiff in *Smith*, 557 N.E.2d 711, who was terminated pursuant to a company wide absence control policy.

However, defendant has not offered any proof of a policy, objectively applied, that defendant only continues to consider employees who acquire medical limitations for ninety days and then terminates them if no positions become available. Thus, defendant's procedure with regard to Watkins and her medical limitations becomes another piece of Watkins' proof of causation. This tips the scale, creating genuine issues as to causation which preclude summary judgment as to Watkins.

### 2. Corporate Economic Factors

Defendant contends that "corporate economic factors" are behind the employment actions taken on Christmas and Green. Defendant submitted affidavits with its motions for summary judgment to support this contention.

#### a. Carol Christmas

In support of its summary judgment motion as to Christmas, defendant submitted the affidavit of Paul W. Emery, the General Manager of the Crown Products Division. Emery states that he was not aware that Christmas was making an allegation of having suffered an on-the-job-injury until after Christmas was terminated. Emery states that the decision to terminate Christmas was made at a July 18, 1991 meeting at which Scott Sommer was present. None of the decisions made at the meeting were finalized until they were approved by Jon Sommer, President of Sommer Metalcraft Corporation (who was not present at the meeting).

■ That one person involved in the decision making process did not know about Christmas' impending worker's compensation claim does not eliminate all genuine issues as to whether Christmas' termination was made as a result of retaliation. Christmas has testified that she told Scott Sommer repeatedly about her CTS. Defendant offers no evidence of either of the Sommers' input as to Christmas' termination. If Scott and Jon knew about Christmas' impending worker's compensation claim and they chose not to award the restructured timekeeping position to Christmas because of that, retaliation could be found. Thus, there are genuine issues of material fact precluding summary judgment as to Carol Christmas.

#### b. Helen Green

■ Helen Green was laid off on April 2, 1991 in a group of employees who defendant maintains were all laid off because of a decline in production. At the time of the layoff, Green held "temporary employee" status under the terms of her employment. The affidavit of Lynn Morgan, personnel manager for Crown Products, states that all but one of

---

**3.** Watkins has made several allegations that she was initially hurt and her injuries were exacerbated due to mistreatment at work. While this, when taken as true, tends to color defendant and some of Watkins' fellow workers as bad actors, it does not relate sufficiently to her termination to create a genuine issue of causation for her Frampton claim.

the eight employees laid off with Green were temporary or provisional employees. Morgan does not state how many of the temporary or provisional employees working at defendant at that time were not laid off.

Green contends that when she told Morgan about her CTS, Morgan told her that she could not work for defendant with CTS. Morgan's affidavit makes no mention of this. Green further contends that the fact that she was not called back to work evidences the retaliatory nature of her layoff. According to Morgan, of the nine employees laid off on April 2, 1991, only three have been recalled to work. However, Morgan also states that during eight weeks of the summer of 1991, Crown did employ as many as four temporary employees at a time. Because these facts present genuine issues as to retaliation, summary judgment as to Helen Green is denied.

### III. DISCUSSION—Motion To Sever

Defendant has moved for the Frampton claims to be severed from the rest of the case or for separate trials. As was stated in the Order dated June 28, 1993, this Court recognizes that a trial in which the state law claims are mixed in with the federal law claims, when only the state law claims warrant a jury and when the state law claims give rise to separate kinds of damage awards and/or other kinds of remedies, would generate, at the very least, considerable confusion. However, as was also stated in the Order, until the United States Supreme Court decides the retroactivity of the Civil Rights Act of 1991,[4] this Court will wait to decide whether the state law claims in the instant case should be severed from the federal law claims for purposes of trial. Depending on the Supreme Court's ruling, the possibility of confusion at trial could be greatly alleviated.

Since we anticipate that this issue will be decided by the Supreme Court by this coming summer, the current trial setting of March 7, 1994, is hereby vacated, to be reset following the Supreme Court decisions in the

cases noted in footnote 4, *supra.* The parties are ordered to raise the issue of severance again, if necessary, after the Supreme Court issues its rulings.

### IV. CONCLUSION

For the above stated reasons, defendant's motions for partial summary judgment are denied. Also, a decision on defendant's renewed motion to sever or for separate trials is stayed. Finally, the trial is continued to a date to be determined following the United States Supreme Court rulings on the issue of the retroactivity of the 1991 Civil Rights Act.

It is so ORDERED.

---

4. *Landgraf v. USI Film Products,* 968 F.2d 427 (5th Cir.1992), *cert. granted in part,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); *Harvis v. Roadway Express, Inc.,* 973 F.2d 490 (6th Cir.

1992), *cert. granted in part sub nom. Rivers v. Roadway Express, Inc.,* —— U.S. ——, 113 S.Ct. 2410, 124 L.Ed.2d 634 (1993).