Barbara J. LESLIE, Plaintiff,

v.

ST. VINCENT NEW HOPE,
INC., Defendant.

No. IP 94–09222–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 7, 1996.

Michael C. Kendall, Kendall Law Office, Indianapolis, Indiana, for plaintiff.

Stephen W. Lyman, Hall Render Killian Heath & Lyman, Indianapolis, Indiana, for defendant.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

Plaintiff Barbara J. Leslie worked as a resident attendant at St. Vincent New Hope, Inc. ("New Hope"), a residential health care facility, for fourteen years. New Hope terminated her employment several months after Leslie suffered a back injury on the job. Leslie has sued New Hope under the Americans with Disabilities Act (ADA), asserting that she was disabled and that New Hope failed to reasonably accommodate her disability by reassigning her to light duty or transferring her to a new position. Under Indiana common law, Leslie also alleges that New Hope terminated her employment in retaliation for filing a worker's compensation claim.[1]

New Hope has moved for summary judgment raising several issues with which federal courts have been wrestling under the ADA. New Hope asserts first that Leslie cannot prove a prima facie case of discrimination under the ADA because she is not a "qualified individual with a disability." New Hope argues both that Leslie does not have a disability as defined by the ADA, and yet that she cannot perform the essential functions of her job as a resident attendant, either with or without reasonable accommo-

---

1. Leslie's complaint also asserted a state law claim against her former supervisor for tortious interference with Leslie's employment contract. That claim was dismissed on the pleadings for failure to state a claim upon which relief could be granted. *Leslie v. St. Vincent New Hope, Inc.,* 873 F.Supp. 1250 (S.D.Ind.1995).

dation. New Hope also claims that it had no obligation to reassign Leslie to another position and that Leslie filed her claim with the EEOC too late to obtain relief for at least some alleged discriminatory acts. Finally, New Hope argues that Leslie has failed to establish a prima facie case of retaliatory discharge. Because the court believes the legal hurdles for plaintiff are not as high as New Hope contends, these issues all involve genuine issues of material fact, and the court therefore denies defendant's motion.

## Undisputed Facts

For purposes of defendant's motion for summary judgment, viewing the evidence in the light most favorable to plaintiff, the following facts are material and not disputed.[2] Leslie began working as a resident attendant at New Hope on September 18, 1978. She continued to work as a resident attendant until New Hope terminated her by letter dated June 2, 1993. New Hope is a residential facility providing rehabilitative services to disabled individuals. Resident attendants help clothe, bathe and feed residents, which often requires lifting. On November 30, 1992, Leslie injured her back while lifting a patient. With the exception of a few hours work in February 1993, Leslie did not return to work following her injury.

Following her injury, Leslie visited Dr. Archibald at the St. Vincent Occupational Health Center several times. On December 16 and 28, 1992, and January 4, 11, and 18, 1993, Dr. Archibald completed Return-to-Work Evaluations releasing Leslie to return to work with restrictions against lifting over 15 pounds and lifting between the floor and waist. On January 18, 1993, Dr. Archibald also referred Leslie to Dr. Sasso at the Indiana Back Center. On January 26, 1993, Dr. Sasso released Leslie to return to work, restricting her to "light duty." On February 17, 1993, Dr. Sasso released Leslie to return to work with no restrictions. On February 23, 1993, Dr. Archibald completed a Return-to-Work Evaluation releasing Leslie to return to work without restriction.

On or about February 25, 1993, Leslie returned to work as a resident attendant. She cared for approximately 20 patients in the Alpha Unit. The Alpha Unit is the most difficult assignment for resident attendants at New Hope because its residents have severe impairments and there is a high resident-to-attendant ratio. Leslie experienced back pain again almost immediately. On February 25, 1993, Dr. Archibald completed another Return-to-Work Evaluation releasing Leslie to return to work with restrictions against lifting over 20 pounds, lifting between floor and waist, and squatting. On March 1, 1993, Dr. Sasso released Leslie to return to work, restricting her to total patient care of no more than three patients per shift. On March 17, 1993, Dr. Sasso evaluated Leslie and assigned her a 2 percent whole body partial permanent physical impairment rating based on a degenerative disc at the L4–5 level of her spine. On or about April 9, 1993, Leslie received a payment of $1,000 to settle her worker's compensation claim based on Dr. Sasso's impairment rating.

After each visit to Dr. Archibald and Dr. Sasso, Leslie asked Gail Languell, her supervisor, for a light duty assignment. Each time, Languell told her that she had nothing available. On May 1, 1993, Leslie met with Languell and Gail Rowe, personnel director at New Hope. Leslie asked to be assigned to a position that would accommodate her physical restrictions. Languell asked Leslie to disregard Dr. Sasso's restrictions and return to her former position as a resident attendant on the Alpha Unit. Leslie refused to do so, but asked to be assigned to food services, dietary, housekeeping or the beauty salon. Rowe and Languell did not offer any positions in those areas, but offered her a position in accounting for which Leslie was not qualified.

On May 3, 1993, Leslie signed a release authorizing Dr. Sasso to disclose details of her medical condition to New Hope.[3] On

---

**2.** Several evidentiary issues raised by New Hope are resolved in a separate order entered today.

**3.** Rowe contacted Dr. Sasso's office after obtaining Leslie's medical release. Some controversy exists as to when Dr. Sasso's restrictions ceased

to apply. Viewing the record in the light most favorable to Leslie, Dr. Sasso's records indicate that on March 17 and again on May 12, 1993, he restricted Leslie's activities.

May 12, 1993, Dr. Sasso completed an attending physician's statement in conjunction with Leslie's application for long-term disability. That statement repeated the restriction that Leslie should take care of no more than three patients per shift. On May 25, 1993, Rowe telephoned Leslie and informed her that she had been released from all physical restrictions and should report to work on May 26, 1993. Leslie explained that she had not received a release from her doctor and asked for some documentation to that effect. Leslie did not report to work.

On June 2, 1993, Rowe sent Leslie a letter explaining that because she did not report to work on May 26, she was considered to have resigned voluntarily effective May 26, 1993. On March 2, 1994, Leslie filed a charge of discrimination with the Equal Employment Opportunity Commission.

## Summary Judgment Standard

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to find in favor of the non-moving party on the particular issue. *E.g., Methodist Medical Ctr. of Ill. v. American Medical Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994). Rule 56 requires New Hope to show the absence of a genuine issue of material fact on an essential element of Leslie's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party properly supports the motion, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. An issue is genuine when the non-moving party comes forward with evidence sufficient to enable the trier of fact to find in her favor on the issue. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Methodist*, 38 F.3d at 319. In determining that question, Leslie is entitled to the benefit of all favorable inferences from the evidence, as long as they are reasonable. *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1057 (7th Cir.1994). Because issues of intent and credibility are so often crucial in employment discrimination cases, the Seventh Circuit has

instructed district courts to apply the standard with "added rigor" before granting summary judgment. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). However, the court should neither "look the other way" to ignore genuine issues of material fact nor "strain to find" material fact issues where there are none. *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1363–64 (7th Cir.1988).

## The Merits

Leslie claims that her back injury rendered her disabled and incapable of performing her job as a resident attendant without reasonable accommodation. She argues that New Hope violated the ADA by failing to reasonably accommodate her disability. She contends New Hope also discharged her in retaliation for filing a worker's compensation claim.

New Hope's principal arguments attempt to defeat Leslie's ADA claim by forcing Leslie to choose between two horns of a dilemma. On one side, an ADA plaintiff must show that he or she is a person with a "disability," which may be either a physical or mental impairment, a record of having such an impairment, or being regarded as having such an impairment. See 42 U.S.C. § 12102(2). Under the ADA, the impairment must be one that "substantially limits one or more of the major life activities" of the plaintiff. *Id.* New Hope seeks here to show that Leslie's back injury is not so serious that it "substantially limits" her in the "major life activity" of working. If that is correct, Leslie is not disabled for purposes of the ADA.

On the other side of the dilemma, New Hope argues, even if Leslie comes forward with evidence to show an impairment sufficiently serious to be a "disability" under the statute, it is still entitled to summary judgment because the impairment is so serious that Leslie cannot perform the essential functions of her job. In terms of the ADA, New Hope argues that Leslie is not a "qualified individual with a disability." The ADA defines that term as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires...." 42 U.S.C. § 12111(8).

Thus, New Hope argues at the same time that Leslie's physical impairment is either not serious enough or too serious. (While it may be theoretically possible for an employer to prevail on both grounds at the same time, each argument tends to undercut the credibility of the other, at least in this case.) The proposed dilemma, however, is a false one. The principal thrust of the employment provisions of the ADA is to impose on employers a duty of "reasonable accommodation" that gives persons with disabilities the ability to do a wide variety of jobs that they might not otherwise be able to perform. While an ADA plaintiff must show both that she has a disability and that she is a qualified individual with a disability, the ADA's duty of reasonable accommodation allows substantial leeway for a plaintiff to satisfy both requirements at the same time. Taking the evidence in the light most favorable to Leslie, she has presented evidence that would permit a reasonable finder of fact to rule in her favor on both of these issues. New Hope is not entitled to summary judgment on either basis.

## I. Leslie's Disability

■ The ADA prohibits discrimination against qualified individuals with a disability in regard to the discharge of employees. 42 U.S.C. § 12112. To survive New Hope's motion for summary judgment, Leslie must come forward with evidence that would allow a reasonable trier of fact to find that she has a disability. The ADA defines "disability" as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Leslie's claim hinges on the existence of a physical impairment that substantially limits the major life activity of working. With respect to the major life activity of working, the regulations explain:

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

■ The Seventh Circuit has explained that whether a person is disabled is "an individualized inquiry, best suited for case-by-case determination." *Byrne v. Board of Educ., Sch. of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992) (applying same standard under Rehabilitation Act, 29 U.S.C. § 794). Courts must analyze whether a particular impairment creates a significant barrier to employment for a particular person. *Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986). Factors to consider may include "the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training." *Byrne,* 979 F.2d at 565 (quoting *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249 (6th Cir. 1985) (Rehabilitation Act).

The evidence before the court on defendant's motion for summary judgment shows that Leslie completed a 10th grade education. Her training included only on-the-job training acquired as a dietary technician, nurse's aide and resident attendant at Indianapolis hospitals and nursing homes, and a cosmetology course. She relies extensively on her husband for help in drafting correspondence, communicating with her health care providers, filing forms with employment and disability related agencies and other duties. Prior to her termination by New Hope, Leslie's entire employment history consisted of work in hospitals and nursing homes in resident attendant or comparable positions.

Dr. Sasso determined that Leslie has a partial permanent physical impairment rating of 2 percent, based on a degenerative disc at level L4–5. Her doctors restricted her physical activity to avoid lifting over 15 pounds, squatting, and lifting from floor to

waist. She testified in her deposition that she was unable to perform the duties of a resident attendant due to these physical limitations. After New Hope fired her, Leslie found work as a housekeeping supervisor, but she has testified that she has limited her work to some degree because of her back pain.

Despite these impairments, New Hope argues that Leslie's inability to perform the "single" resident attendant job fails to qualify her as "disabled", as defined by the ADA. This "single job" theory is based on language in the relevant ADA regulations: "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). This concept in the regulations in turn stems from an example often cited under the Rehabilitation Act: A person with acrophobia who receives nine offers for employment as an accountant that she could accept, but must turn down a tenth offer because the office is on the 37th floor, is not deemed disabled. See *Forrisi*, 794 F.2d at 934–35; *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088, 1099 (D.Haw.1980); see also *Byrne*, 979 F.2d at 565–66 (teacher who could not teach at two particular schools not disabled for purposes of Rehabilitation Act). Leslie's situation is not comparable to the example, for she clearly could not perform a wide range of jobs as a resident attendant or with comparable duties involving lifting patients.

However, New Hope derives from *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942–43 (10th Cir.1994), and *Marschand v. Norfolk & Western Ry. Co.*, 876 F.Supp. 1528, 1538 (N.D.Ind.1995), a much heavier burden on ADA plaintiffs to produce evidence to show a "substantial limitation" in working. New Hope contends that Leslie "must produce some 'evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs ('few,' 'many,' 'most') from which [she] would be excluded because of an impairment.'" Defendant's Reply Br. at 7, quoting *Marschand*, 876 F.Supp. at 1539 (citing in turn 29 C.F.R. App., § 1630.2(j)); *Bolton*, 36 F.3d at 944; *Nicandro v. Berkeley Farms, Inc.*, 1994 WL 705267 (N.D.Cal.1994). Close examination of the regulation does not support the imposition of such a requirement on an ADA plaintiff. The regulation provides as follows:

> (2) *The following factors should be considered* in determining whether an individual is substantially limited in a major life activity:
>
> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.
>
> (3) With respect to the major life activity of working—
>
> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
>
> (ii) In addition to the factors listed in paragraph (j)(2) of this section, *the following factors may be considered* in determining whether an individual is substantially limited in the major life activity of "working":
>
> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the indi-

vidual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(2) & (3) (emphasis added). Thus, the types of evidence which New Hope says the plaintiff *must* present concern factors that the regulation provides "may be considered." A plaintiff's failure to come forward with evidence as to factors that merely "may be considered" should not ordinarily require dismissal of her case.

New Hope's argument reads too much into *Bolton v. Scrivner, Inc.* In that case, the Tenth Circuit affirmed summary judgment for the defendant because the evidence as a whole failed to show a significant restriction in his "ability to perform either a class of jobs or a broad range of jobs in various classes." 36 F.3d at 944, quoting 29 C.F.R. § 1630.2(j)(3)(i). The Tenth Circuit in *Bolton* did not expressly hold that a plaintiff must come forward with evidence concerning the factors that merely "may be considered" under § 1630.2(j)(3)(ii). The plaintiff must come forward with some evidence to show that a disability will significantly restrict her ability to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). But the regulation clearly contemplates that a plaintiff may make that showing based on evidence of the nature of the impairment itself, as well as other circumstances. While it may often be helpful to have the types of job market data that New Hope demands here, such evidence should not always be necessary.[4]

In this case, the evidence now before the court shows that Leslie cannot perform her prior duties as a resident attendant so long as she is required to lift patients. The evidence also shows she cannot perform any job requiring heavy lifting, twisting, or squatting. Leslie's entire work history reveals prior employment only as a dietary technician, nurse's aide and resident attendant at Indianapolis hospitals and nursing homes. She has had limited education and appears to lack transferable skills. Leslie's back problems, which would impede her from a broad range of relatively unskilled jobs (including virtually all the jobs she has ever had) and her lack of transferable skills substantially limit her opportunities for many other kinds of employment that she might be able to perform, apart from her back injury. The evidence is more than sufficient to create a genuine issue of material fact as to whether Leslie's back problems amount to a substantial limit on the major life activity of working. More detailed information to quantify her restrictions in the job market is not necessary.

## II. Qualified Individual with a Disability

■ To establish a prima facie case of discrimination under the ADA, Leslie must also show that she is a "qualified individual with a disability." The act defines this term as follows:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8). The undisputed facts before the court depict the job of a resident attendant as one requiring a good deal of lifting and twisting of the back. Attendants must lift residents in order to clothe, bathe, and assist them with toileting. Leslie agreed in her deposition testimony that resident attendants had to do lifting and twisting "all of the time." Leslie's health care providers ordered her to avoid lifting over 15 pounds, squatting, and lifting from floor to waist. The undisputed facts show that Ms. Leslie was unable to perform the essential functions of a resident attendant *on the Alpha Unit.* Her ADA claim hinges on the argument that she could work as a resident attendant with reasonable accommodation and/or that she

---

4. This court has no disagreement with the result reached in *Marschand* on this issue, see 876 F.Supp. at 1539–40, but New Hope relies on language in the opinion to the effect that a plaintiff "must provide" evidence of the factors listed in section 1630.2(j)(3)(ii) of the regulations. *Id.* at 1539. Other district courts have followed *Marschand*'s announcement of this requirement. See *Howard v. Navistar Int'l Trans. Corp.*, 904 F.Supp. 922, 928–29 (E.D.Wis.1995); *Best v. Shell Oil Co.*, 910 F.Supp. 405, 410–11 (N.D.Ill. 1995). On that question, this court disagrees for the reasons stated.

could perform the essential functions of other jobs at New Hope.

New Hope also presents an estoppel argument based on Ms. Leslie's worker's compensation documents. New Hope asserts that those documents constitute a binding admission that Leslie cannot perform the essential functions and duties of her job. Leslie does not dispute the fact that she cannot perform the essential functions of a resident attendant on the Alpha Unit. However, Leslie can still set forth a prima facie case of discrimination by showing that she could perform essential job functions with reasonable accommodation, either in the form of restructuring her resident attendant job or transferring her to a vacant position in another department.

At the time of her back injury in November 1992 and the related pain recurrence in February 1993, Leslie worked as a resident attendant on the Alpha Unit. The Alpha Unit contained residents who required the greatest amount of care and had a high resident-to-attendant ratio. On a given shift, Leslie was responsible for as many as twenty patients. Dr. Sasso's restriction specifying that Leslie should not attend more than three patients per shift rendered her incapable of performing the essential duties of a resident attendant in the Alpha Unit without accommodation.[5]

The question thus becomes whether Leslie could perform the essential job duties with reasonable accommodation. Dr. Sasso's return to work evaluations called for Leslie to return to work, but with "light duty" and care for no more than three patients per shift. Leslie testified in her deposition that she repeatedly asked Gail Languell, her supervisor at New Hope, to allow her to return to work with a light duty assignment. Leslie also testified that other units in the facility required less lifting and had much lower resident-to-attendant ratios. In particular, assignment to the Kappa Unit may have satisfied Dr. Sasso's limitations while allowing Leslie to return to work as a resident attendant.

The evidence before the court indicates that the Kappa Unit involved lighter duty because some of the residents required no lifting and because the unit had a lower resident-to-attendant ratio. The undisputed facts also show that Leslie could perform non-lifting resident attendant duties, including cleaning rooms and closets, straightening drawers and closets and passing linens. Leslie testified that she also sought to return to New Hope in other capacities, including food services, dietary, housekeeping or beauty salon. These positions would not require heavy lifting. The record raises a genuine issue of material fact as to whether Leslie could perform the essential functions of the job if she were accommodated by assignment to the Kappa Unit, or by assignment to food services, dietary, housekeeping or the beauty salon. Accordingly, there are genuine issues of material fact as to whether Leslie is a "qualified individual with a disability."

### III. Whether New Hope Provided Reasonable Accommodation

■ The ADA provides that unlawful discrimination occurs when an employer fails to make reasonable accommodations to the known physical limitations of a qualified individual with a disability, unless the employer can show that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). New Hope argues that Leslie could not perform the essential functions of a resident attendant with accommodation and that Leslie cannot identify any reasonable accommodation which would have enabled her to perform those functions. Leslie argues that reasonable accommodation would include restructuring her resident attendant position to cover light duties and/or reassigning her to a vacant position in dietary, food services, housekeeping or the beauty salon.

On New Hope's motion for summary judgment, Leslie is entitled to the reasonable inference that the three patient per shift restriction continued to apply in accordance with the documents signed by Dr. Sasso.

---

5. Dr. Sasso signed forms dated March 17 and May 12, 1993, indicating that Leslie could return to work with a restriction of caring for no more than three patients per shift; however, New Hope has submitted affidavits stating that this restriction ceased to apply on March 17, 1993.

The ADA states that "reasonable accommodation" may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added). New Hope contends that the ADA does not impose upon an employee the affirmative duty to find another job for an employee who is no longer qualified for the job he or she was doing. The court in *Marschand v. Norfolk & Western Ry.* said as much, 876 F.Supp. at 1542, but went on to say more and to qualify that statement.

 The scope of an employer's duty to provide reasonable accommodation by reassigning an employee is a problem that is arising frequently under the ADA. There are some clear limits on the employer's duty of reasonable accommodation. First, the employer is not required to *promote* an employee as a form of accommodation, *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995), "nor must an employer reassign the employee to an *occupied* position, nor must the employer *create a new position* to accommodate the disabled worker." *Id.* (emphasis added) (citing 29 C.F.R. pt. 1630, App. § 1630.2(*o*)). On the other hand, at a minimum, where an employer has a practice of reassigning employees or allowing them to transfer to other positions, the employer may not deny a disabled employee the same opportunity that other employees have. That much was clear even under the Rehabilitation Act. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987) (Rehabilitation Act). The problem cases lie between these points. The plain language of the ADA may require in some cases that an employer reassign a disabled employee to a new position where that action would be "reasonable" within the meaning of the ADA. In enacting the ADA, Congress deliberately included in the definition of reasonable accommodation "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). In the committee report describing the final legislation, Congress explained:

Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and the employer from losing a valuable worker. Efforts should be made, however, to accommodate an employee in the position that he or she was hired to fill before reassignment is considered. The Committee also wishes to make clear the reassignment need only be to a vacant position— "bumping" another employee out of a position to create a vacancy is not required.

H.R.Rep. No. 485 (II), 101st Cong., 2d Sess. 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 345. Where other forms of accommodation are not reasonable but reassignment would be reasonable under all the circumstances, the plain language of the ADA may require reassignment even if the employer does not have a regular policy or practice of permitting non-disabled employees to transfer. Cf. *Marschand*, 876 F.Supp. at 1542–43 (discussing extent of duty to reassign employee with disability).

 It is by now well established that the ADA does not require an employer to provide the best accommodation possible to a disabled employee. 29 C.F.R. Pt. 1630 App. (interpreting 29 C.F.R. § 1630.9). Nor is an employer required to accommodate a disabled employee in exactly the way he or she requests. *Vande Zande v. State of Wis. Dep't of Admin.*, 851 F.Supp. 353, 359 (W.D.Wis.1994), *aff'd*, 44 F.3d 538 (7th Cir. 1995). An employer need only provide a "reasonable" accommodation. See 42 U.S.C. §§ 12111(9), 12112(b)(5)(A); 29 C.F.R. § 1630.9; 29 C.F.R. Pt. 1630 App. (interpreting § 1630.9); *Vande Zande*, 851 F.Supp. at 359–60. Whether a defendant has made a

reasonable accommodation to an individual with a disability is ordinarily a question of fact. *Vande Zande*, 851 F.Supp. at 355 (citing *McWright v. Alexander*, 982 F.2d 222 (7th Cir.1992)). Cf. *Eckles v. Consolidated Rail Corp.*, 890 F.Supp. 1391, 1413 (S.D.Ind. 1995) (ADA does not require accommodation that would infringe on rights of other employees under collective bargaining agreement).

This case focuses on the question of whether New Hope provided reasonable accommodation to Leslie when she sought to return to work as a "light duty" resident attendant and when she asked to return to work in other capacities, including food services, dietary, housekeeping or beauty salon positions. Leslie's deposition testimony indicates that she asked her supervisor, Gail Languell, for a light duty assignment after each doctor's visit. Leslie also testified that at the May 1, 1993, meeting with Languell and Rowe she asked to work in other capacities but was only offered a position for which she was not qualified.

Evidence that an employee requested such an accommodation is not enough, of course, to show that denial of the accommodation amounted to discrimination under the ADA. Leslie has provided substantially more evidence to support her claim that denial of these accommodations amounted to discrimination. Over the course of her fourteen years at New Hope, Leslie worked in each of the residential units. She testified in her deposition that resident attendants move from unit to unit frequently. She also testified that at one time when she asked Languell for light duty, she knew that there was an open position in the Kappa Unit. Moreover, Leslie testified that she knew of another resident attendant who hurt his back while working in the Alpha Unit and who received a transfer to the Kappa Unit the same day.

New Hope has not alleged any attempts to accommodate Leslie's disability, other than

the proposed transfer to accounting, and a "brainstorming" session on May 1, 1993.[6] Rowe's affidavit states that at the May 1 meeting, she considered a transfer but concluded there were no openings available in the positions for which Leslie qualified. However, New Hope's Answers to Interrogatories indicate that another resident attendant with a lifting and twisting restriction had been provided with a temporary assignment to accommodate her limitations. Moreover, that other employee resigned in May 1993, presumably creating an opening. This evidence and Leslie's testimony about frequent rotation and reassignment of resident attendants are more than sufficient to raise a genuine issue of fact as to whether a reassignment would have been a reasonable accommodation for Leslie.

## IV. Leslie's Retaliatory Discharge Claim

New Hope also argues that Leslie has not provided sufficient evidence of retaliatory motive to raise a genuine issue of material fact concerning an essential element of her claim under state law for retaliatory discharge. In a case alleging discharge in retaliation for filing a worker's compensation claim, the Indiana Supreme Court noted that the question of retaliatory motives should be left to the trier of fact. *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (1973). Accord, *Watkins v. Sommer Metalcraft Corp.*, 844 F.Supp. 1321, 1326 (S.D.Ind.1994). However, if no reasonable trier of fact could conclude that the discharge was motivated by retaliation, summary judgment is proper. *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420 n. 4 (7th Cir.1990) (Indiana law). To survive summary judgment, a plaintiff in a retaliatory discharge case must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination. *Watkins*, 844 F.Supp. at 1326. Proximity in

---

**6.** New Hope argues that Leslie's ADA claim is time barred because the statute of limitations on her claim began to run in December of 1992 when she first requested a light duty assignment. The argument is without merit. This was not a situation like the denial of tenure at a university, where the alleged discriminatory decision becomes final long before the consequences be-

come painful. Cf. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Lever v. Northwestern Univ.*, 979 F.2d 552, 553 (7th Cir.1992). New Hope did not make a final decision until June 2, 1993, when it fired Leslie. Her claim arose then. Therefore, her complaint was timely filed with the Equal Employment Opportunity Commission.

time between the worker's compensation complaint and the termination and evidence that the employer's asserted reason for a termination is pretextual are examples of evidence that may provide indirect proof of causation. *Hamann v. Gates Chevrolet,* 910 F.2d at 1420–21; *Watkins,* 844 F.Supp. at 1326.

Under current Indiana case law, the facts here, viewed in the light most favorable to the plaintiff, permit the inference that the true reasons for Leslie's termination were her disability and retaliation for her filing of a worker's compensation claim. Rowe terminated her employment by letter dated June 2, 1993, in close proximity to Leslie's receipt of her worker's compensation settlement on April 9, 1993. The evidence relevant to whether New Hope failed to reasonably accommodate Leslie also raises genuine issues of fact concerning New Hope's asserted reasons for firing Leslie. These facts are sufficient to raise a genuine issue on the material question of retaliatory motive.

## CONCLUSION

Genuine issues of material fact remain for resolution at trial on both the ADA claim and the retaliatory discharge claim. New Hope's motion for summary judgment is therefore DENIED.

So ordered.